## Walker Williams v. The State.

### No. 330. Decided January 19, 1910.

### Rehearing denied February 9, 1910.

**1.—Assault to Murder—Sufficiency of the Evidence.**

Where upon trial for assault with intent to murder, the evidence sustained the conviction, the same will not be disturbed.

**2.—Same—Newly Discovered Evidence.**

Where upon motion for new trial, after conviction for assault to murder, the same did not show proper diligence on the part of the defendant to acquaint himself with the alleged newly discovered evidence, there was no error in overruling the motion.

**3.—Same—Misconduct of Jury—Discretion of Court.**

Where, on motion for new trial, after conviction of assault with intent to murder, defendant complained of certain language not in evidence, used by one of the jurors to his fellows during their retirement, and it became an issue as to whether said language was used before or after the verdict was found, and the same was passed upon by the trial judge and found adversely to the defendant, there being evidence pro and con on this issue, there was no reversible error. Following Veas v. State, 55 Texas Crim. Rep., 125.

Appeal from the District Court of Rusk. Tried below before the Hon. W. C. Buford.

Appeal from a conviction of assault with intent to murder; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*J. W. McDavid* and *T. J. Arnold,* for appellant.—On question of misconduct of jury: Stringfellow v. State, 42 Texas Crim. Rep., 588; Mitchell v. State, 36 Texas Crim. Rep., 278; Tate v. State, 38 Texas Crim. Rep., 261; Helvenston v. State, 53 Texas Crim. Rep., 636, 111 S. W. Rep., 959; Arnwine v. State, 54 Texas Crim. Rep., 213, 114 S. W. Rep., 796; Oates v. State, 56 Texas Crim. Rep., 571, 121 S. W. Rep., 370.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction for assault with intent to murder with a punishment of seven years.

The fairness of the trial in the court below is assailed in this court upon three grounds. First, the insufficiency of the testimony; second, upon the ground of newly discovered evidence, and, third, the misconduct of the jury. As to the first ground it is sufficient to say that the testimony amply supports the verdict. The proof shows that the appellant and the prosecuting witness Joe Hall were at a social gathering on the 19th of June last year. As the prosecuting witness Joe Hall approached the crowd appellant, one of the crowd, made some insulting remark about Hall, when Hall asked him what he was cursing him about. Appellant denied cursing the witness Hall. Hall turned off and the appellant reached in a grip, drew a pistol and fired, striking Hall in the arm. Appellant's contention was that at the time he fired, Hall was advancing on him and attempted to draw a razor. The issue of self-defense was submitted to the jury. We are of opinion that the testimony amply supports the verdict.

2.  Appellant in his motion for a new trial alleged as one of the grounds thereof that he had discovered, since the trial of the case, that he could prove by one Montgomery that on the 18th day of June, the day before the difficulty, that he, Montgomery, tried to hire appellant to work on that day, but that he was going up yonder to get drunk (meaning Greenville, the place where the difficulty occurred). In the trial of the case the State placed a witness on the stand by the name of Windom, who testified that on the 18th day of June he was in the town of Rusk when he heard Mr. Montgomery, who ran a planer down close to the depot, ask the appellant if he was going to work for him tomorrow, the 19th, when appellant replied that he was going to get drunk and going over to Greenville and get him a negro. The purpose of the motion for new trial being to prove by the said Montgomery that he did not say anything about going to get him a negro. How appellant could claim to be surprised by this testimony and how he could say that he was not acquainted with the fact as to what Montgomery would swear until after the trial, we are not advised from the record. The record discloses that the witness Windom testified that was the statement that appellant made to Montgomery. Montgomery resided in the town where the trial occurred and could have been procured in a half hour. Hence, this testimony can not be regarded either as newly discovered or as coming to the knowledge of appellant after the trial. Diligence would have suggested, since this matter was disclosed by the witness Windom, that process be issued and the witness Montgomery be brought into court. We, therefore, hold that appellant was not entitled to a new trial upon the ground of newly discovered evidence.

3.  As to the misconduct of the jury. In the motion for new trial

appellant complains that after the jury had retired to consider of their verdict that one Bill Vice, who was a member of the jury, stated before the verdict had been decided upon that he knew the defendant; that he was a mean negro; that he had three or four years ago shot a negro on his place; that he had a quarter of a dollar sewed up in his head to protect a fractured skull, caused by a lick on the head in a fight, and that he, Vice, would like to send the defendant for a longer term if he thought he had good sense. This issue was tried in the court below and testimony offered by the. appellant and the State on said issues. Some of the jurors stated that there was something said about the negro being a mean negro and having fights and that this occurred before the jury had reached a verdict. Others of the jury testified that nothing of this sort occurred until after the verdict was reached. Jeff Allen, who was a member of the jury, testified that he was a member of the jury that returned the verdict against appellant awarding him seven years in the penitentiary; that Mr. Vice was selected as foreman, and he then asked the jury as to their opinion of the case. "Some of us spoke up and says give him ten years—didn't remember who that was that spoke up—but they was all willing to give him ten years, and up to that time I don't think anything was said with reference to giving him fifteen years. Mr. Hamm joined in this ten years proposition (Mr. Hamm being the juror making the affidavit as to the misconduct of the jury) and voted with the crowd on the ten years and he voted to give him ten years, and up to this time Mr. Vice had made no statement before the jury. Then Mr. Vice spoke up and says, I think seven years is long enough for the negro; that he had his head bursted and had a dollar sewed in it, and I said that I thought seven years was enough for a boy like he was; and then we took that vote and we all voted for seven years but Mr. Cohaden, and he sat in the window and didn't get up, and then Mr. Cohaden says, I am with you all to put him up for seven years, and got up at the same time he was talking. Mr. Vice did not say a word that caused the jury to center upon the ten year proposition. Mr. Vice never said a word except that he wanted to reduce his time from ten years to seven years." On cross-examination this witness testified: "I did not hear anyone suggest a five year punishment, and I did not hear anything at all said about a five year term for him. Mr. Vice just said to some of the jury—I might have been the one—I think I says, 'I think seven years is enough for him; he don't look like he is over 17 or 18 years old;' and then Mr. Vice spoke up and says, he is older than he looks, and that he was a pretty bad negro; that he had shot a negro on his place once, and Mr. Vice says further, I think seven years is enough time for him. Then he told us that the verdict had done been written and signed. That was all Mr. Vice said about the negro. If he said anything about his conduct here in town I never heard it. I guess Mr. Hamm heard this talk by Mr. Vice, and Mr. Hamm did not ask any questions about the negro's conduct." J. M.

Cohaden, another witness testified: That he was a member of the jury, and in his testimony he states that Mr. Vice was for the lowest term. Some of the jury, and most of them, wanted to give the defendant ten years, and that Mr. Vice argued with them to get them down. He further states that after they had agreed on seven years, Mr. Vice spoke up and said: "I know the negro; he worked on my place once;" that the negro had been struck over the head and had his skull bursted and that he has a silver half dollar sewed up in his head and that he was a "fussy" negro among the negroes. That to the witness' best recollection Mr. Vice was for a five year term. Mr. Vice took the stand and testified that he was a member of the jury, and here we will set out Mr. Vice's testimony in full, as follows: "My name is Bill Vice; sat upon the jury on the trial of the above case last week. I don't know that I can recall everything that I said in the jury room, but I will try to give the sum and substance of it. We went in the jury room; someone nominated me foreman and I was elected foreman, and I says all that think Sun Greenwood is guilty of the charge claimed by the State, let it be known by rising to his feet, and everybody rose, and I remember having gotten up before we decided the case and told the jury that I wanted to speak a few words in behalf of the defendant, that I didn't think he could be held accountable for his crime as a clear-minded man; that he can't possibly be a very bright man, and about this time one of the jurors says, if I thought he was old enough I would be more hard on him, but he seems to be just a kid, and I remarked I expect he is about 35 years old, that he deceives his looks and that we better be light on him, that I didn't think he intended to kill the other negro; that he was just one of them egotistical persons who wanted to make a record for himself and that we ought to just try him for the injury he done; that he can't be a very bright fellow; that he had his skull broke by being hit over the head with a stick by another negro and had a half dollar sewed in his head, and then I think I taken the sentiment of the jury, and some of them spoke up even as high as fifteen years—don't think any of them said less than ten years, and I said I would be willing to put the negro in for five years—that was my first statement, and then some man spoke up to give him seven years; I could not say which juryman it was that spoke up and says, let's give him seven years. I think I made the impression on the jury that I was the best friend Sun Greenwood had on the jury. I made the statement about the half dollar in his head, etc., before we deliberated any at all on the verdict and before we settled on the verdict. I was a little inclined not to give him a very heavy penalty, but I seen the way the jury was leaning and I agreed to give him the seven years with the balance. I made some statement to the jury about him shooting a negro on my place, as sworn to by Mr. Hamm, but I could not tell you when that statement was made, but think it was made after we had agreed on the verdict. I know John Mont-

gòmery; he lives about a mile from town, and works at the new plan-
ing mill here in town, probably half mile from the courthouse."
Cross-examined he testified as follows: "I think it was after we had
decided on what we would give Sun; I wanted to get a lighter verdict
for him, and just made the remark that if Sun or his attorney had
thought about it, that they would not have had me on the jury, because
he had shot a negro on my place once, and at that time the verdict
had not been signed. I said awhile ago, that so far as Sun was con-
cerned, I stated in the jury room, that he was just one of these ego-
tistical negroes that wanted to make a showing for himself and that
I didn't think he intended to kill the negro." It may be stated that
there was very little difference in the testimony of the different mem-
bers of the jury who were examined as to what Mr. Vice said, but
there is some difference between the jurors as to when it was said.
Some of the jurors testified that the remarks of Vice as to the negro
being a bad negro and fighting other negroes was made after the ver-
dict had been agreed upon; others that it was made before. However,
in passing, it may be stated that all the jurors testified that what
was said by Mr. Vice did not influence them. Without passing on the
question as to whether this court, or the trial court should be con-
cluded by the statement of the jurors that testimony adduced in the
jury room after their retirement, did not influence the jury, we hold
that there being a conflict in the testimony and the issue having been
formed and a trial had thereon in the court below before the judge, in
passing upon the motion for new trial, and the judge having found
as a matter of fact adverse to appellant's contention, and that the
remarks that were made by Mr. Vice were made after reaching the
verdict, this court would not feel justified in granting a new trial
upon this ground. See Sam Veas v. State, 55 Texas Cr. Rep., 125.

This disposes of all the grounds of the motion for new trial. No
complaint is made of the charge of the court and finding no error
in the record, the judgment is affirmed.

*Affirmed.*

[Rehearing denied February 9, 1910.—Reporter.]